UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
────────────────────────────────────

VANESSA LYNN SPALLINA,

              Plaintiff,          15-CV-6044

     -v-                 DECISION
                                    AND ORDER

CAROLYN W. COLVIN,
Acting Commissioner OF Social Security,

              Defendant.

────────────────────────────────────

    Vanessa Lynn Spallina ("plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner" or "defendant") improperly denied her applications for disability insurance benefits ("DIB") under the Social Security Act (the "SSA").

    Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set forth below, plaintiff's motion is denied and defendant's motion is granted.

## **PROCEDURAL HISTORY**

    On May 3, 2012, plaintiff filed an application for DIB alleging disability as of August 23, 2011. Administrative Transcript ("T.") 69, 136-137.  Following an initial denial of that application, plaintiff testified at a hearing held, at her request, on June 11, 2013 before administrative law judge ("ALJ") Gregory M. Hamel. T. 27-56.  The ALJ issued an unfavorable decision on July 9,

2013, and a request for review was denied by the Appeals Council on November 28, 2014. T. 1.

Considering the case *de novo* and applying the five-step analysis contained in the Social Security Administration's regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ made, *inter alia*, the following findings: (1) plaintiff met the insured status requirements of the SSA through December 31, 2016; (2) plaintiff had not engaged in substantial gainful activity since August 23, 2011; (3) her asthma, major depressive disorder, panic attacks, generalized anxiety disorder, posttraumatic stress disorder, personality disorder, and obesity were severe impairments; (3) her impairments, singly or combined, did not meet or medically equal the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520[d], 404.1525, 404.1526); and (4) plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: no exposure to high concentrations of dust, fumes, gases and other pulmonary irritants; only routine and repetitive tasks; no more than occasional public contact. T. 13-17. The ALJ further found that plaintiff was unable to perform any past relevant work. T. 20.

The Appeals Council declined to review the ALJ's decision, and this action ensued. T 1.

**DISCUSSION**

I.  General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.1999), *quoting Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record as a whole and whether the Commissioner's conclusions are based upon an erroneous legal standard. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir.2003).

3

Plaintiff, 48 years old at the time of her hearing, testified that she graduated from Indiana Business College in 1992 with a certificate in secretarial work. T. 34.  Plaintiff testified that left her retail job in 2013 after missing five and a half months for sick leave due to her  panic and anxiety disorders. T. 35-36. Plaintiff, 5 foot five and 280 pounds, lives with her husband. T. 38.  With respect to her daily activities, plaintiff testified that, depending on how she felt that day, she did light chores, such as washing dishes, laundry, internet browsing, and reading books, newspapers, and magazines. T. 38-39.  Certain activities were limited by her asthma, such as climbing up and down stairs, and restricted by her anxiety, such as driving or going anywhere without her husband. T. 40-41.  Plaintiff's counsel noted that plaintiff's leg was visibly shaking as she testified. T. 42. Plaintiff took four or five medications, including Klonopin, gabapentin, Zoloft, Claritin, and ibuprofen. T. 43.  She testified that the medications made her "zombie-like" and that she  did not take any the morning of the hearing so she could "understand" the questions and answer them "clearly." T. 44.  Plaintiff was able to do basic personal care, such as bathing, dressing, and using the bathroom. T. 44.  Plaintiff felt, however, that she was unable to work in any capacity due to her extreme anxiety and regular panic attacks. T. 45.  Plaintiff testified that she was "very sensitive"; even when working by herself "in a quiet place," plaintiff would

"get very anxious" and have "panic attacks at any time." T. 45.
Her current medication was helping to curb her anxiety and panic,
but she was "still hav[ing] a lot of attacks." T. 46.   Plaintiff
also had asthma attacks "at least once a week maybe." T. 46.   A
typical anxiety attack ranged from plaintiff ending up on the floor
from "lack of oxygen" to a milder version with disorientation,
confusion, and crying. T. 47.   Plaintiff testified that she went to
the hospital for a panic attack on two occasions during her recent
employment. T. 47-48.

II.   The Commissioner's Decision Denying Benefits is Supported by
      Substantial Evidence in the Record.

      A.   The ALJ's finding at Step Three.

      Plaintiff contends that remand is warranted because the ALJ
failed to evaluate plaintiff's severe mental impairments under
section 12.04C of the Listing of Impairments at Step Three of his
analysis. Plaintiff's memorandum of law, p. 21-28.   Defendant
responds that the ALJ expressly noted that he considered the
section 12.04C and found that none of the criteria was met by
plaintiff. Defendant's memorandum of law, p. 14.

      The Court concludes that the ALJ properly analyzed evidence
concerning plaintiff's mental impairments.   To meet the criteria
for paragraph C, plaintiff must have:

        Medically documented history of a chronic affective
        disorder of at least 2 years' duration that has caused
        more than a minimal limitation of ability to do basic
        work activities, with symptoms or signs currently

5

attenuated by medication or psychosocial support, and one
of the following:

1. Repeated episodes of decompensation, each of extended
duration; or

2. A residual disease process that has resulted in such
marginal adjustment that even a minimal increase in
mental demands or change in the environment would be
predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to
function outside a highly supportive living arrangement,
with an indication of continued need for such an
arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04C. The term
"repeated episodes of decompensation" is defined as three episodes
within one year, or an average of once every four months, each
episode lasting for at least two weeks. *See* 20 C.F.R. Pt. 404,
Subpt. P, App. 1, ¶ 12.00C.4. Episodes of decompensation are
temporary increases in symptoms causing difficulties in performing
activities of daily living, maintaining social relationships, or
maintaining concentration, persistence, or pace. *See id.* Such
episodes "would ordinarily require increased treatment or a less
stressful situation (or a combination of the two)," which can be
inferred from documentation "showing significant alteration in
medication [or] the need for a more structured psychological
support system (e.g., hospitalizations, placement in a halfway
house, or a highly structured and directing household); or other
relevant information in the record about the existence, severity,
and duration of the episode." *Id.*

Here, the ALJ "considered whether the 'paragraph C' criteria [is] satisfied." T. 16.  In concluding that disability was not established under Listings 12.04 and 12.06, the ALJ found that "the record is devoid of evidence of episodes of decompensation, potential episodes of decompensation, or the inability to function outside a highly supportive living arrangement or outside the area of [plaintiff's] house." T. 16.  Plaintiff's contention that the ALJ's findings on this issue are "brief" and "boilerplate" is contradicted by the ALJ's discussion of the record evidence in Step Three, which is devoid of any indication that the ALJ failed to consider section 12.04C.

In his decision, the ALJ noted that, with respect to "episodes of decomposition" considered in "[t]he fourth functional area," plaintiff's reports of "panic attacks ha[d] not required her to be admitted to any facility." T. 15.  The ALJ concluded, therefore, that plaintiff had "experienced no episodes of decompensation which have been of extended duration." T. 15.  The ALJ further noted that plaintiff was treated in the emergency department in September 2011 for a panic attack after she ran out of Xanax, and she reported symptoms of "nausea, dizziness, chest pain, and shortness of breath." T. 15.  The ALJ then considered the records of plaintiff's treating psychiatrist since September 2011, Dr. Jane Hong, who assessed plaintiff with panic disorder without agoraphobia, major depressive disorder, posttraumatic stress disorder, personality

disorder, and a Global Assessment of Functioning ("GAF") score of 54-58, indicating moderate symptoms or difficulty in social, occupational or school functioning. T. 15. The ALJ noted Dr. Hong's finding that, although plaintiff experienced fewer panic attacks by April 2012, she remained anxious about work and felt that she could only work part time. T. 15.

During a July 2012 consultative examination by Dr. Lin, however, plaintiff reported worsening symptoms, including difficulty sleeping, dysphoric mood, hopelessness, excessive worrying and social withdrawal. T. 16. The ALJ noted that Dr. Lin assessed plaintiff with major depressive disorder, panic disorder with agoraphobia, and generalized anxiety disorder. T. 16. Dr. Lin opined that plaintiff could not "appropriately deal with stress;" her "[d]ifficulties were caused by lack of motivation;" and that plaintiff's psychiatric problems may "significantly interfere with [her] ability to function on a daily basis." T. 317. Pl  The ALJ also considered Dr. Hong's May 2013 treatment notes that: plaintiff had "self-limited" panic attacks on a weekly basis; she was "less depressed with only a few days of depressed mood at a time;" her anxiety had improved with Nerontin; she was "taking afternoon gabapentin only as needed;" and her functioning had improved overall with individual psychotherapy and medication management. T. 16.

8

The Court concludes that the ALJ's failure to find any "episodes of decompensation, potential episodes of decompensation, or [plaintiff's] inability to function outside a highly supportive living arrangement or outside the area of [her] home" is supported by substantial evidence in the record.  Despite plaintiff's reports of unspecified work-related anxiety resulting in panic attacks, sometimes on a weekly basis, there is no evidence in the record of episodes that meet the criteria of Listing 12.04C.  In early 2012, plaintiff reported that her anxiety, brought on by considering a return to work, was "fairly controlled" and that her medications were "helpful." T. 289.  Treatment records from Dr. Giugno at Unity Health in 2012 reveal that plaintiff reported an improvement in her anxiety through the spring, noting that the frequency of her anxiety attacks was reduced from "several" attacks per day to several per week. T. 241.  Plaintiff further stated that her current medications were "working well" and she "recently started to go to her job at the mall." T. 241.  In June 2012, Dr. Hong advised plaintiff, who remained anxious about work, that there were "many other medications that [plaintiff] could try" and that her regimen was "suboptimal" in light of continued symptoms and weight gain as a side effect. T. 298.  On the two occasions that plaintiff was admitted to the hospital for anxiety attacks, she had run out of medication. T. 237, 307.  The record indicates that she was released on the day of admittance. T. 307.

Based on the foregoing, the Court finds that the ALJ applied the appropriate legal standards in considering the medical evidence in the record relating to plaintiff's mental impairments and properly evaluated plaintiff's treating source and consultative opinions.  The ALJ expressly considered the paragraph C criteria and record evidence pertaining thereto, and, in any event, he was "not required" to mention every piece of evidence presented to him or "explain[] why he considered particular evidence unpersuasive or insufficient." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983).  There is no indication the ALJ selectively chose or ignored evidence from the record to support his Step-Three finding.  Consequently, remand is not warranted.

**B. The ALJ's RFC assessment**

Plaintiff further asserts that remand is required because the ALJ's RFC assessment is not based on substantial evidence because he (1) failed to properly explain how he formulated his RFC finding; (2) substituted his own lay opinion for that of medical evidence contained in the record.; and (3) failed to follow the treating physician rule. Plaintiff's memorandum of law, p. 29-38.  Defendant responds that the ALJ's finding is based on substantial evidence and is properly supported by the opinions of Dr. Hong and consultative examiners Drs. Montalvo, Lin, and Meade. Defendant's memorandum of law, p. 16-19.

It is well established that "'[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hogan v. Astrue*, 491 F. Supp.2d 347, 354 (W.D.N.Y. 2007), quoting Social Security Ruling 96-8p, 1996 WL 374184, *7 (S.S.A. 1996) and citing *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998).  In this case, the ALJ's narrative discussion of plaintiff's treating and consultative physicians generally indicates his appropriate consideration of their opinions.  As stated above, the ALJ's failure to discuss every part of an opinion does not indicate that such evidence was not considered.  The Court finds that, upon its review of the record as a whole, the ALJ's RFC assessment is supported by substantial evidence.

In his RFC assessment, the ALJ found that plaintiff was able to perform light work with the following limitations: no exposure to high concentrations of dust, fumes, gases and other pulmonary irritants; only routine and repetitive tasks; no more than occasional public contact. T. 13-17.  There is little support in the record for plaintiff's contention that the ALJ failed to consider the combined effects of her asthma and anxiety, particularly in light of his finding that she was able to perform light work with no exposure to pulmonary irritants.  The record reveals that plaintiff had: no hospital visits for asthma; well

11

controlled asthma with medication, including an inhaler; and no wheezing upon consultative examination. Pulmonary function tests performed in March 2012 revealed moderate obstructive lung defect with normal lung volumes and normal single breath diffusing capacity, and significant improvement in airway mechanics following the inhalation of a bronchodilator. T. 275.  Dr. Montalvo found that plaintiff had mild limitations bending, lifting, and carrying, but he assess no restrictions related to her asthma, alone or in combination with any psychological or nonexertional limitations. The record contains no medical evidence that contradicts his opinion. *See Younes v. Colvin,* 2015 WL 1524417, *5 (N.D.N.Y. Apr. 2, 2015)(opinions from state agency medical consultants and may be entitled to greater weight than the opinions of treating sources).

The Court also finds that there is no basis for plaintiff's contention that the ALJ failed to follow the treating physician rule.  This rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2).  "The less consistent that opinion is with the record as a whole, [however,] the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), citing 20 C.F.R. § 404.1527(d)(4).

It is well settled that the ALJ is entitled to "credit portions of a treating physician's report while declining to accept other portions of the same report" *Pavia v. Colvin*, 2015 WL 4644537, at *4 (W.D.N.Y. 2015), citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The record here reveals that Dr. Hong maintained a significant mental health treatment relationship with plaintiff, and she found plaintiff to have no marked or extreme limitations, which is consistent with the ALJ's findings regarding plaintiff's RFC, her ability to perform light work with certain limitations, and her disability status. Dr. Hong assessed only moderate limitations and could not predict whether plaintiff's limitations would cause her to miss work. The Court's review of the record as a whole reveals that the ALJ's assessment is based on substantial evidence.

   C.   **The ALJ's credibility finding.**

Plaintiff contends that the ALJ improperly used her part time work and good work history to discount her credibility. Plaintiff's memorandum of law, p. 38-40. Defendant responds that the ALJ applied the proper legal standard and expressly considered the factors enumerated in 404.1529(c)(3) and SSR 96-7p. Defendant's memorandum of law, p. 19-21.

The Court finds that the ALJ's discussion of plaintiff's credibility, which incorporates a review of her testimony, indicates that he used the proper standard in assessing

credibility. *See Judelsohn v. Astrue*, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012). In his decision, the ALJ specifically stated that he followed the two-step credibility analysis and applied 20 C.F.R. § 404.1529 and SSR 96-7p in assessing plaintiff's credibility. *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility).

Here, the ALJ's concluded that plaintiff's self-reports and complaints were not credible concerning the intensity, persistence, and limiting effects of her anxiety because her reports were inconsistent and they conflicted with substantial evidence in the record, including Dr. Hong's treatment notes. The ALJ noted Dr. Hong's assessment that plaintiff's affect was not markedly anxious; she had a history of being noncompliant with taking her medication; and agoraphobia was not assessed despite plaintiff's hearing testimony that she could not go anywhere alone. Plaintiff's assertions concerning her inability to work, even on a part-time basis, rest largely on her complaints and reports of having to miss work due to frequent work-related panic or anxiety attacks. Significantly, the ALJ notes, and the Court agrees, that the frequency alleged is not substantially supported by, or documented in, her medical records. Although it is well-established that "[a] patient's report of complaints, or history, is an

14

essential diagnostic tool." (*Green-Younger v. Barnhart*, 335 F.3d 99, 107 [2d Cir. 2003][internal quotation marks ommitted]), the record reveals only two instances of plaintiff's treatment for anxiety attacks, both occurring when she was no longer taking, or had run out of, medication.  The ALJ further noted that plaintiff was able to carry out a wide range of household activities, including grocery shopping with her husband and going out to eat. It is clear in the ALJ's  decision that he carefully considered plaintiff's complaints concerning the intensity, persistence, and functional limiting effects of her symptoms against the entire record. T. 17-20.  Consequently, the ALJ's credibility finding will not be disturbed.

<u>**CONCLUSION**</u>

For the foregoing reasons the plaintiff's motion for judgment on the pleadings (Docket No. 8) is denied, and defendant's cross-motion for judgment on the pleadings (Docket No. 10) is granted. The ALJ's decision denying plaintiff's claim for DIB is supported by substantial evidence in the record. Therefore, the complaint is dismissed in its entirety, with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ MICHAEL A. TELESCA
HONORABLE MICHAEL A. TELESCA
UNITED STATES DISTRICT JUDGE

DATED: Rochester, New York
        January 15, 2016

15